UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN L. WAY, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 11-1182 (RJL) |
| | ) | |
| ISAAC JOHNSON, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION
(September 26, 2012) [Dkt. ##19, 21, 22, 29]

This matter is before the Court on defendants' motions to dismiss. For the reasons

discussed below, the motions are GRANTED.

## BACKGROUND

On August 24, 2010, plaintiff was arrested pursuant to a warrant issued by the

United States Parole Commission ("Commission"). Compl. [Dkt. #1] at 5. A hearing

examiner found probable cause to believe that plaintiff had violated three conditions of

his parole: he had used dangerous and habit-forming drugs (Charge No. 1), he failed to

submit to drug testing (Charge No. 2), and he failed to participate in a drug treatment

program (Charge No. 3). D.C. Probable Cause Hearing Digest dated Aug. 31, 2010,

Exs. B-1 – B-4 to Compl. [Dkt. #1-1]. Revocation proceedings were suspended,

however, so that plaintiff could participate in a residential drug treatment program:

> Your final revocation hearing has been postponed for you to participate and successfully complete the secure portion of the treatment program. If the Commission is informed by the treatment program that you have been discharged unsuccessfully from the program, you will be scheduled for a final revocation hearing within 21 days of receipt of such notification. If you successfully complete the secure portion of the treatment program, the Commission will issue a separate Notice of Action ordering that you be reinstated to supervision.

Notice of Action dated Sept. 15, 2010, Ex. A to Compl. [Dkt. #1-1]. On October 1, 2010, plaintiff was admitted to the 180-day Secure Residential Treatment Program ("SRTP"), a program "overseen exclusively" by employees of the Court Services and Offender Supervision Agency for the District of Columbia ("CSOSA") and housed in a unit of the Correctional Treatment Facility ("CTF"), a facility "privately owned and operated by the Corrections Corporation of America ('CCA')." Mem. of P. & A. ("Johnson Mem.") [Dkt. #21] at 4-5; Aff. of Rebecca Richards ("Richards Aff."), Ex. 1 to Johnson Mem. [Dkt. #21-2], ¶ 3 ("CCA owns and operates CTF pursuant to an operations and management agreement with the District of Columbia to house inmates designated by the D.C. Department of Corrections at CTF.").

Plaintiff was deemed ineligible to continue the SRTP following an incident which occurred on January 21, 2011. Mem. dated Jan. 28, 2011, Ex. C to Compl. [Dkt. #1-1]. Plaintiff was transferred to a Special Management Unit at the CTF, and was "place[d] on lock down in the mental health unit on suicide watch." Compl. at 6-7. He was

transferred from the CTF to the District's Central Detention Facility ("D.C. Jail") on or about January 28, 2011. *Id.* at 7.

On January 30, 2011, plaintiff filed an inmate grievance, Inmate Complaint – Informal Resolution, Ex. D to Compl. [Dkt. #1-1], which Simon T. Wainwright, Warden of the D.C. Jail, forwarded to the Office of Internal Affairs for the District of Columbia Department of Corrections ("DOC"), Mem. dated Feb. 4, 2011, Ex. E to Compl. [Dkt. #1-1]. According to plaintiff, Warden Wainwright "considered [the matter] resolved." *Id.*, *see* Compl. at 7-8. Plaintiff also wrote letters to the Commission's Chair, Isaac Fulwood, *id.* at 8, to CSOSA officials, *id.*, and to DOC officials, *id.* at 9. *See also* Letter dated Mar. 8, 2011 & Letter date Mar. 17, 2011, Exs. F & J to Compl. [Dkt. #1-1].

Had plaintiff successfully completed the SRTP, he states that he would have been released from custody on March 30, 2011. Compl. at 5. He contends "that the defendants in this case [have] violated [his] Constitutional[ly] Protected Rights, when they discharged [him] from the [SRTP based on] a false allegation by another [SRTP participant] who claimed to have problems with homosexuals." *Id.* at 3. Plaintiff avers that the defendants failed to investigate the allegedly false allegation prompting plaintiff's discharge from the SRTP and disciplinary transfer to the D.C. Jail. *Id.* Plaintiff alleges that the defendants' actions were biased and discriminatory because of plaintiff's homosexuality and HIV+ status, *id.*, and that defendants "acted with malice,

vindictiveness, intolerance and prejudice," *id.* at 4.[1] For these alleged violations of

plaintiff's right to due process, *id.* at 13, he is "seeking judgment for compensatory

damages in the amount of $ 500,000.00 and punitive damages in the amount of

$ 500,000.00." *Id.* at 3, 14.

## DISCUSSION[2]

### I.   The Court May Treat Defendants' Motions As Conceded

All defendants moved to dismiss the complaint, and certain defendants moved

alternatively for summary judgment. *See* Warden Simon T. Wainwright's Mot. to

Dismiss or in the Alternative for Summ. J. [Dkt. #19]; Def. Isaac Johnson's Mot. to

Dismiss or, in the Alternative, for Summ. J. [Dkt. ##21, 22]; Defs.' Mot. to Dismiss [Dkt.

#29]. On February 2, 2012, the Court issued Orders [Dkt. #30-31] advising plaintiff of

---

[1]   Plaintiff further alleges, *see* Compl. at 4, a violation of the District of Columbia Human Rights Act, but the provision he cites, D.C. Code. § 2-1401.01 (2007), is merely a general statement that "[e]very individual shall have an equal opportunity to participate fully in the economic, culture and intellectual life of the District," D.C. Code § 2-1401.01. In light of the Human Rights Act's support of "an equal opportunity to participate in . . . employment, . . . places of accommodation, resort or amusement, . . . educational institutions, . . . public service, and . . . housing and commercial space accommodations," *id.*, it is unclear whether or how this provision applies to plaintiff's participation in a residential drug treatment program at the Commission's direction.

[2]   For purposes of the Memorandum Opinion, the Court presumes, without deciding, that service of process has been effected properly as to all defendants and that the Court may exercise personal jurisdiction over them. The Court declines to discuss defendants' arguments for dismissal, *see* Johnson Mem. at 10-11; Richards Aff. ¶¶ 3-7; Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem. to Dismiss") [Dkt. #29] at 5-7; *see* Declaration of Eugene F. Chay ("Chay Decl."), Ex. to Defs.' Mem. to Dismiss [Dkt. #29-1], ¶¶ 3-4; Declaration of Rockne Chickinell ("Chickinell Decl."), Ex. to Defs.' Mem. to Dismiss [Dkt. #29-2], ¶ 2 (paragraph number designated by the Court), under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and Rule 12(b)(5) for insufficient service of process.

his obligations under the Federal Rules of Civil Procedure and the local rules of this

Court to respond to the motions, and specifically warned plaintiff that, if he did not file

oppositions by February 29, 2012, the Court would treat the motions as conceded.

Local Civil Rule 7(b) of this Court provides:

> Within 14 days of the date of service or at such other time as
> the Court may direct, an opposing party shall serve and file a
> memorandum of points and authorities in opposition to the
> motion.   If such a memorandum is not filed within the
> prescribed time, the Court may treat the motion as conceded.

LCvR 7(b) (emphasis added).  A motion for summary judgment may be granted as

conceded if the non-moving party fails to file a timely opposition. *FDIC v. Bender*, 127

F.3d 58, 67-68 (D.C. Cir. 1997) (upholding the treatment of the plaintiff's summary

judgment motion as conceded because the defendant filed its opposition late).  "It is

understood in this Circuit that when a plaintiff files an opposition to a dispositive motion

and addresses only certain arguments raised by the defendant, a court may treat those

arguments that the plaintiff failed to address as conceded." *Buggs v. Powell*, 293 F.

Supp. 2d 135, 141 (D.D.C. 2003) (citations omitted); *Stephenson v. Cox*, 223 F. Supp. 2d

119, 121 (D.D.C. 2002).

Plaintiff's Opposition to Defendants['] Motion to Dismiss [Dkt. #32], though

timely filed, sets forth no substantive arguments in response to defendants' motions.  In

this circumstance, the Court treats defendants' motion as conceded, and GRANTS each

motion.  Notwithstanding this conclusion, the Court briefly addresses defendants'

arguments.

## II. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") in relevant part provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Exhaustion under the PLRA requires "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), meaning that a prisoner must comply with the procedural rules of the prison grievance process, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process, *id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001). All the defendants argue that plaintiff failed to exhaust his administrative remedies prior to filing this action, and the motions may be granted on this

basis.[3]

There are inmate grievance processes at both the CTF and the D.C. Jail. *See generally* Affidavit of Joyce Allen ("Allen Aff."), Ex. 2 to Johnson Mem. [Dkt. #21-3]; *see* Inmate/Resident Grievance Procedures effective July 9, 2007, Attach. A to Allen Aff.; D.C. Dep't of Corrections Program Statement 4030.1G, Inmate Grievance Procedures (IGP) dated Mar. 9, 2010, Ex. A to Mem. of P. & A. in Supp. of Warden Simon T. Wainwright's Mot. to Dismiss or in the Alternative for Summ. J. ("Wainwright Mem.") [Dkt. #19-1]. The grievance process at the CTF is a five-step process beginning with the submission of an Informal Resolution Form (Step One) and culminating with an appeal of the Warden's response (obtained in Step Four) to the Contract Monitor (Step Five). Allen Aff. ¶ 8. "If an inmate fails to follow this procedure or omits any part of it, he has not exhausted the administrative remedies available." Allen Aff. ¶ 9. Similarly, the District's IGP process begins with the submission of a grievance and ends with an appeal to the DOC Director. *See generally* DOC Program Statement, Ex. A to Wainwright Mem., ¶¶ 20-23.

The CTF's Facility Grievance Officer is responsible for coordinating "the

---

[3]     "Exhaustion is 'an affirmative defense that the defendants have the burden of pleading and proving.'" *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005) ("[A]n inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant."). Although the federal defendants have not supported their exhaustion argument with declarations or other exhibits, *see generally* Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss [Dkt. #29] at 8-9, the Court relies on the submissions of the remaining defendants.

grievance procedure at CTF, assigning a number to each grievance, coordinating the investigation of grievances relating to CCA, . . . and maintaining all grievance records and documents, including the permanent grievance log." Allen Aff. ¶ 4. Her review of "the grievance and informal resolution logs" reveals "no record that [plaintiff] did, at any time since [January 21, 2011, when] he would have become aware of a change in his housing status and the filing of this lawsuit, submit any Informal Resolution or Inmate/Residence Grievance regarding his allegations in the Complaint with respect to his claims against CCA employees Warden Johnson and Investigator Richards." *Id.* ¶ 12.

At the D.C. Jail, "incoming prisoner grievances are scanned and entered into a computer database which can be searched by the name of the sender." Affidavit of Hazel Lee ("Lee Aff."), Ex. 2 to Wainwright Mem. [Dkt. #19-2], ¶ 3. The Grievance Coordinator's review of the database for calendar year 2011 shows that plaintiff "sent an informal grievance resolution form on January 30, 2011," that he received a response from Warden Wainwright on February 4, 2011, and that he "did not appeal Warden Wainwright's response." *Id.* ¶ 6.

At most, plaintiff has completed the first step of the IGP at the D.C. Jail. He did not file a grievance at all with respect to any action taken by an official or employee at the CTF. He failed to complete the administrative remedy processes, and therefore his claims against Wardens Wainwright and Johnson and Investigator Richardson are dismissed.

***III.    Plaintiff Fails to State Claims Under 42 U.S.C. § 1983***

In order to state a claim under 42 U.S.C. § 1983 for a violation of a constitutional right, a complaint must allege facts sufficient to support a reasonable inference that "(1) a person (2) acting under color of [District of Columbia] law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States."[4] *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 829 (1985).   A civil action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), "is the federal analog to suits brought against state officials under . . . § 1983." *Marshall v. Fed. Bureau of Prisons,* 518 F. Supp. 2d 190, 193 (D.D.C. 2007) (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (internal citation omitted)).   Under *Bivens*, a plaintiff has "an implied private action for damages against federal officers alleged to have violated [his] constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

A. The District of Columbia and Simon T. Wainwright

Plaintiff names Simon T. Wainwright, Warden of the D.C. Jail, as a defendant to this action.  The Court presumes that plaintiff intends to sue Wainwright in both his official and individual capacities.

---

[4]    In pertinent part, 42 U.S.C. § 1983 provides that:
[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]
42 U.S.C. § 1983.

A suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," and "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted). "Under 42 U.S.C. § 1983, a municipality, such as the District [of Columbia], is only liable for the acts of its employees if a plaintiff can show that: (1) he was deprived of a constitutional right; and (2) such deprivation was the result of a government policy or custom." *Hampton v. District of Columbia*, 764 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004)); *see Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691-94 (1978); *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) ("A municipality may be sued under [§] 1983 for implementing or executing a policy or custom that causes the deprivation of an individual's constitutional rights."). "Respondeat superior, or vicarious liability, will not attach under § 1983, and therefore a municipality cannot be held liable solely because it employs a tortfeasor." *Burnett v. Sharma*, 511 F. Supp. 2d 136, 141 (D.D.C. 2007) (citations and internal quotation marks omitted).

It is plaintiff's burden to plead the existence of a municipal policy, custom or practice that violated his federal constitutional or statutory rights. *See, e.g., Bonaccorsy v. District of Columbia*, 685 F. Supp. 2d 18, 26 (D.D.C. 2010). Nowhere in his complaint does plaintiff allege that a District of Columbia policy, custom or practice resulted in the violation of a constitutional right, and plaintiff's failure to set forth such factual

allegations renders the complaint subject to dismissal. *See Dant v. District of Columbia*, 829 F.2d 69, 77 (D.C. Cir. 1987); *Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 97 (D.D.C. 2011) ("[T]o survive a motion to dismiss, a complaint asserting a § 1983 claim must allege a predicate constitutional violation which was caused by a policy of the District of Columbia.").

The sole allegation of the complaint mentioning defendant Wainwright pertains to Wainwright's response to plaintiff's institutional grievance. *See* Compl. at 7-8. Plaintiff does not allege that Wainwright was personally or directly involved in any violation of his constitutional rights. Absent such allegations, plaintiff's § 1983 claim against Wainwright in his individual capacity fails. *See Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993).

B. <u>The Commission and CSOSA</u>

The Commission and CSOSA move to dismiss on the ground that, as federal entities, they do not act under color of District of Columbia law and, therefore, § 1983 does not apply to them. *See* Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("Fed. Defs.' Mem.") [Dkt. #29] at 9-11. The argument applies equally to the individual federal defendants who presumably have been sued in their official capacities. As stated above, a suit against a government official in his official capacity is treated as if it were a suit against the government entity itself. Accordingly, plaintiff's claims against Mays-Jacks, Singletary, Williams, Barno, Williams, and Young are treated as if they were brought against CSOSA directly, and his claims against Isaac Fulwood, Chair of the Commission,

are likewise treated as if they were brought against the Commission directly.

By its terms, § 1983 does not apply to any federal government entity or to federal officials acting under federal law. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005). Notwithstanding its authority to "provide supervision . . . for offenders on probation, parole, and supervised release pursuant to the District of Columbia Official Code," D.C. Code § 24-133(c)(1) (2007), CSOSA is a federal government entity, D.C. Code § 24-133(a) (2007) (establishing CSOSA "within the executive branch of the Federal Government"); *see Epps v. U.S. Attorney General*, 575 F. Supp. 2d 232, 234 n.1 (D.D.C. 2008) (noting that CSOSA is a federal agency); *see also Ali v. D.C. Court Servs. & Offender Supervision Agency*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008) (concluding that sovereign immunity barred a suit against CSOSA and its employees in their official capacities and dismissing the complaint brought by a parolee as to the individual defendants, including a Court Supervision Officer and her supervisor). Likewise, despite its "role in administering parole for D.C. Code offenders," the Commission is a federal entity and "retains the immunity it is due as an arm of the federal sovereign." *Settles*, 429 F.3d at 1106. Thus, plaintiff cannot maintain a § 1983 action against CSOSA or the Commission because the provision "does not apply to federal officials acting under color of federal law." *Id.* at 1104.

## C. Isaac Fulwood

Plaintiff brings this action in part under *Bivens*, 403 U.S. 388 (1971), against the individual defendants in their individual capacities. Critical to a *Bivens* claim is an

allegation "that the defendant federal official was personally involved in the illegal conduct." *Simpkins v. District of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 1997); *Voinche v. Obama*, 744 F. Supp. 2d 165, 177 (D.D.C. 2010). Allegations of Fulwood's personal involvement in plaintiff's case are missing from plaintiff's complaint. Even without this pleading defect, plaintiff's claim still fails. As a parole commissioner, Fulwood performs a quasi-judicial function, and, therefore, he is absolutely immune from suit. *See Jones v. Fulwood*, No. 11-0935, 2012 WL 1710381, at *5 (D.D.C. May 16, 2012) ("[T]he Commissioners are absolutely immune from a lawsuit such as this which is predicated on acts taken in their quasi-judicial or quasi-legislative capacity." (internal quotation marks and citation omitted)); *Pate v. United States*, 277 F. Supp. 2d 1, 11 (D.D.C. 2003) (holding that Chair of former District of Columbia Board of Parole was protected by absolute immunity); *see also Mowatt v. U.S. Parole Comm'n*, 815 F. Supp. 2d 199, 206 (D.D.C. 2011) (extending absolute immunity to Commission case analyst).

D. <u>Sharon Mays-Jacks, Ms. Singletary, Russell Williams, Mr. Barno, Thomas H. Williams, and Bryan Young</u>

Plaintiff's *Bivens* claims against Sharon Mays-Jacks, Ms. Singletary, Russell Williams, Mr. Barno, Thomas H. Williams, and Bryan Young in their individual capacities also fail because these defendants are protected by qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether

qualified immunity applies, the Court conducts a two-step analysis to determine

(1) "whether the facts that a plaintiff has alleged or shown make out a violation of a

constitutional right," and (2) whether the right at issue was clearly established at the time

of the defendant's alleged misconduct. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009).

The sequence of this analysis is not mandatory, and the Court may "exercise [its] sound

discretion in deciding which of the two prongs . . . should be addressed first in light of the

circumstances in the particular case at hand." *Id.* at 236.

Plaintiff's claims fail at the first prong.  There is no protected interest in parole,

*see generally Ellis v. District of Columbia,* 84 F.3d 1413, 1415-20 (D.C. Cir. 1996), even

if parole initially is granted and rescinded prior to the prisoner's actual release, *see Jago*

*v. Van Curen*, 454 U.S. 14, 17 (1981) (per curiam).  Nor is there a protected interest in a

prisoner's place of confinement, *see Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), or

participation in a particular program such as the SRTP, *see Forrester v. Fed. Bureau of*

*Prisons,* No. 06-1954, 2007 WL 2616916, at *2 (D.D.C. Sept. 12, 2007) ("[P]risoners do

not have a due process right to participate in vocational and educational programs, let

alone one of their choosing.") (citations omitted); *Williams v. Moore,* 899 F. Supp. 711,

714 (D.D.C. 1995) (concluding that the District of Columbia had not created a liberty

interest in a work furlough program).  Even if these defendants' actions brought about

plaintiff's expulsion from the SRTP, they do not rise to the level of a constitutional

violation.

## CONCLUSION

Plaintiff has failed to file a timely and substantive opposition to defendants'

motions, and the Court accordingly treats defendants' motions as conceded.  Even if

plaintiff had filed a meaningful opposition, all of his claims fail.  Defendants have

demonstrated that plaintiff did not exhaust his administrative remedies, and summary

judgment properly is GRANTED for the District of Columbia, Wardens Wainwright and

Johnson, and Investigator Richardson.  Plaintiff otherwise fails to state claims under

§ 1983 and *Bivens* upon which relief can be granted, and these claims must be

DISMISSED.  An Order accompanies this Memorandum Opinion.


_____

RICHARD J. LEON
United States District Judge